JANE R. KEYES et al. v. GEORGE N. MUNROE, Appellant.

Division Two, November 30, 1915.

1. **EVIDENCE: Unprobated Will: No Objection.** An unprobated will is not competent evidence of title; but if it is offered and admitted without objection, and there are facts in the record which amount to more than an inference that it had been probated, the trial court will not on appeal be convicted of error in admitting it.

2. **PARTIES: Deceased Devisees: Ejectment: Judgment for Whole.** Where plaintiffs claim title through a will which devised one-third of the land in fee to his widow, who has died since the suit began, a judgment which gives the whole of the land to the descendants of testator's deceased son and only other devisee, is erroneous, unless there is a showing that said son was the only child of said widow and that she died the owner of said one-third and intestate as to him, or if testate that she devised the land to him or his descendants.

3. **EJECTMENT: Identity of Names.** From identity of name prima-facie identity of person is to be presumed; but this prima-

facie case of identity is liable to be shaken by the slightest proof of facts which produce a doubt of identity.

4. ———: ———: Reyes for Keyes: Deed Contradicted by Index. If the only proof to contradict the record of a deed made in 1859 showing E. N. Reyes to be the grantee is the record index showing E. N. Keyes to be the grantee, a judgment in ejectment for the heirs of E. N. Keyes cannot stand. The deed in such case would be the best evidence. But proof *aliunde* may be made that the deed was erroneously recorded, or that the name upon the record is Keyes and not Reyes, and that the apparent discrepancy arises from the age in the record or from blind writing; and if such proof of a substantial character is made, then the index is competent as a circumstance.

Appeal from Reynolds Circuit Court.—*Hon. E. M. Dearing,* Judge.

REVERSED AND REMANDED.

*R. I. January* for appellant.

(1) A will must be probated to pass title to land. Snuffer v. Howerton, 124 Mo. 637; Smith v. Estes, 72 Mo. 310. (2) A party plaintiff cannot impeach his own evidence. 1 Greenleaf on Ev., sec. 442. (3) It is not permissible to introduce parol or intrinsic evidence to vary or contradict a judicial or deed record. Sutton v. Cole, 155 Mo. 206; Long v. Long, 141 Mo. 371; 1 Devlin on Deeds, sec. 193; 1 Greenleaf on Evidence, sec. 442. (4) The tax deed is prima-facie evidence of title in the purchaser. Sec. 11501, R. S. 1909. (5) The law does not require that the claimant under the tax deed, shall establish title against the whole world, but only between parties to the suit. Machine Works v. Bowers, 200 Mo. 236; Graton v. Land Co., 189 Mo. 322; Gage v. Cantwell, 191 Mo. 698. (6) The index to deed records is no part of the record, and E. N. Keyes had no deed of record; so there was no constructive notice that E. N. Keyes ever had any title to the land. Devlin on Deeds, sec. 695; Shepherd v.

Burkhalter, 13 Ga. 443, 58 Am. Dec. 523; Bishop v. Schneider, 46 Mo. 472.

*C. M. Buford, Arthur T. Brewster* and *Sam M. Brewster* for respondents.

(1) Upon the whole record the judgment is for the right party. (2) The index to deed records is authorized and required by law, and may be resorted to for the purpose of aiding in the correct construction of a deed record. Sec. 10384, R. S. 1909; Smith v. Lindsey, 89 Mo. 76. (3) The court inspected the record and made a finding on a question of fact, and such, when supported with any evidence, is conclusive upon the parties. Morrison v. Bomer, 195 Mo. 535; Chilton v. Nickey, 169 S. W. 979. (4) The index being an ancient writing and being supported by competent evidence and other facts and circumstances is entitled to greater weight than the unsupported erroneous record of the deed. (5) It is immaterial whether the will of Ell N. Keyes was probated or not, for if probated title would be in the present plaintiffs through the will, and if unprobated they would still have the title by inheritance. (6) Title, like any other fact, may be established by circumstantial evidence, and it is not necessary that the circumstances should remove all reasonable doubt; a preponderance of the evidence is sufficient. Brewer v. Cochran, 99 S. W. (Tex.) 1033.

FARIS, P. J.—This is an action to determine interest to certain lands situate in Reynolds county. Plaintiffs had judgment vesting title to the whole of the lands in fee in them, and defendant appeals. Pending this appeal defendant departed this life, but since, pursuant to stipulation, Eva W. Munroe, defendant's sole devisee, has been substituted as appellant and the cause revived in her name; it is not deemed necessary to destroy the identity of the case by a change in

the style thereof, and this explanation stands in lieu of such change.

The lands involved are the northeast quarter and the east half of the northwest quarter and the northwest quarter of the northwest quarter of section 13 in township 33 north, of range 3 west, and situated as stated, in Reynolds county.

Both the petition and the answer are conventional and in the latter defendant joins with plaintiffs in praying the court to ascertain and determine the title as between the parties litigant.

The facts shown in evidence upon the trial are few and meagre and this meagreness has caused much difficulty in reaching a conclusion in the case. The lands were entered by one John Dorsey from the United States. On the 15th of June, 1859, Dorsey conveyed to one E. N. *Keyes* or to E. N. *Reyes,* of Cleveland, Ohio. Since the recorded copy of the deed shows the name as last above set out, about this question of whether the name of Dorsey's grantee is Keyes or Reyes a large part of the controversy turns.

Upon the trial plaintiffs offered a purported copy of the will of Ell. N. Keyes, who resided in his lifetime at Cleveland, Ohio; by the term of which will said Keyes gave his widow Elizabeth L. Keyes (who afterwards intermarried with one Churchill, and died pending this suit) *one-third of all of his real property in fee* and to his son Frank E. Keyes the residue thereof. Plaintiffs herein are the widow of said Frank E. Keyes, who died in 1899, and his two daughters, constituting all of his heirs. Mrs. Jane Rodgers Keyes, who is a plaintiff herein, and as stated, is the widow of Frank E. Keyes, deceased, testified orally in the case and in substance stated that E. N. Keyes (who plaintiffs contend is the grantee in the conveyance from Dorsey) died in Cleveland, Ohio, about 1870 or 1871; that he had resided there continuously from 1861; but that he was residing in 1859 (the date of the

conveyance from Dorsey), at Keyesville, Vermont; that search had been made for deeds or other muniments of title to the land in controversy both among the papers of E. N. Keyes and among the papers of Mrs. Churchill's estate, but that no such papers whatever in any wise having reference to this land were found. The only fact stated by this witness connecting plaintiffs' ancestor in identity with the grantee in the Dorsey deed, was the fact (elicited without objection) that Frank E. Keyes had come to some indefinite part of Missouri about 1895 to look for, or look after, lands which had belonged to his father. This witness stated, however, that the name of Reynolds county did not refresh her memory or suggest to her that the land in controversy was located therein, and that no taxes had ever been paid by her husband or any other of the family upon this land. In short the oral testimony is (and this though not objected to, was utterly incompetent) that the witness's husband came to some portion of Missouri in 1895 to look for, or look after, some lands, which had, as he averred, belonged to his father. Clearly, the weight of such testimony, even if it were competent, is negligible.

In passing it may be said that plaintiffs offered, over the objections and exceptions of defendant, the index to the deed records of Reynolds county, wherein it appears that entry No. 56, bearing date June 15, 1859, was a deed wherein John Dorsey was grantor and E. N. Keyes was grantee and that the lands conveyed were those in controversy here. This in substance is the whole of plaintiffs' proof.

Defendant offered a sheriff's deed dated May 24, 1882, purporting to convey under a sheriff's sale for taxes all of the interest of John Dorsey and E. N. Keyes to the land in controversy to R. I. January. To the introduction of this sheriff's deed plaintiffs made objection that it passed no title, for the reason that at the time of the tax suit, the judgment and sale said

E. N. Keyes had been dead for more than ten years. Other conveyances were offered from R. I. January down to defendant herein, but which are not pertinent to the points up for discussion. The land was conceded to be wild, timbered, uncultivated land, and no point is made as to any statute of limitations.

No declarations of law were requested or given on either side.

The points urged upon us for reversal are in brief: (a) that the judgment is against the evidence and against the law under the evidence and for the wrong party; (b) that the court erred in admitting incompetent evidence offered by plaintiffs, and (c) that specifically, the court erred in admitting the index to the deed records to vary the solemn record of the deed as found in the land records of Reynolds county.

## OPINION.

Defendant contends that the will of E. N. Keyes offered in evidence does not show that it had ever been probated, and that for this reason it was not admissible in evidence and could not pass title to the land in dispute. There can be no two diverse views as to the correctness ordinarily of this contention. But the record discloses that no objection whatever was made to this document when it was offered. If objection to it had been lodged with the learned trial court he would no doubt, as in duty bound (Snuffer v. Howerton, 124 Mo. 637), have sustained such objection. But we do not think we should sustain an objection to an instrument which is so vital a part of plaintiffs' case, when such objection is made for the first time in this court. While the record before us does not show probate thereof, there is more than an inference that the will was in fact probated. Proof of probate may have been at hand, and a timely objection below might have resulted in putting the

*Unprobated Will.*

proof of the will into this record. It does appear that the Ohio probate court acted under and pursuant to its provisions, a thing we may safely assume it would not have done under an unproven will. We disallow this contention, so far as it is sought thereby to convict the court *nisi* of reversible error.

Touching this same will it is, however, urged that Mrs. Elizabeth K. Churchill (or her heirs, or devisees) is a proper party plaintiff. Mrs. Churchill was origi-

**Judgment.**

nally a party; but she was dismissed hence upon the trial, for the reason, as counsel for plaintiffs advise us in their brief, that she had died pending the action, and counsel farther urge that this fact of her demise was well understood by all parties as well as by the trial court, and that the action was tried by all concerned upon the theory that she was dead. We think this explanation is fairly well sustained by clear inferences which appear upon the record.

It does appear, however, that there was devised to Mrs. Churchill (who, as stated above, was the widow of said E. N. Keyes, and after his death married one Churchill) by the will which plaintiffs offered, one-third of the land in controversy herein in fee. She, or, if in fact she be dead, her heirs or devisees, own that one-third yet, and plaintiffs, so far as the record discloses, have no title or interest in it. The judgment of the court in so far at least as it gives the whole of this land to plaintiffs is erroneous.

The contention of plaintiffs that since they are all of the heirs of Mrs. Elizabeth Churchill it makes no difference whether she was a party or not, or whether the will was probated or not, might be well taken if it were borne out by the record; but it is not so borne out. The record shows that Frank E. Keyes, the father and former husband respectively of plaintiffs, was the only child of E. N. Keyes, but it does not show that he was the child of Mrs. Churchill, except by an ambig-

uous inference, or that he was her only child, or
whether she died testate or intestate, or whether she
had or had not born of her marriage to Churchill issue,
which either inherited her share or a part of her share
in this land, or served as a conduit to pass title or a
curtesy estate to her last husband. Upon the record
before us the judgment of the court to this extent is
erroneous.

Points on both sides of this controversy are dark
and undeveloped. Their development would serve we
think to promote justice in this case, which for aught
that is shown by the record may lie with either side.
For example, it may be that the deed which appears
of record in the apparent name of E. N. *Reyes,* may
be in truth to E. N. *Keyes,* and the seeming error a
result of blind writing by the copyist, or of age in the
record; if this be so, then an opportunity to put in
proof upon this point should in deference to justice be
afforded. There is no such competent proof in this
record.

It may well be that more certain and definite proof
of the identity of plaintiffs' ancestor with that E. N.
*Reyes* or E. N. *Keyes* who bought this land from Dor-
sey in 1859 may be obtainable upon another trial. We
are mindful that from identity of name
prima-facie identity of person is to be
presumed. [Geer v. Lumber Co., 134 Mo.
l. c. 95; Mosely v. Reily, 126 Mo. l. c. 129.] But this
prima-facie case so shown is liable to be much shaken
by the very slightest proof of facts which produce a
doubt of identity. A well-known writer seems to state
the rule on this point very acceptably and clearly:

"The probative force of the inference of identity
from similarity of names is greatly diminished in force
even to the vanishing point by introducing into the
consideration of the matter facts inconsistent with the
truth of the administrative assumption that similar

names identify a single individual." [2 Chamber-layne, Mod. Law of Ev., sec. 1191.]

As the case must be retried it'may be well to say that it is clear that naught else appearing the index of the land records can not suffice to overturn the solemn recitals of a recorded deed. Nothing being shown upon one side but the deed and upon the other the index each contradicting the other, it is plain that the reason and logic of the case lie with the record of the deed itself as being the best evidence of the contents of the original. So much for the contrasted weight of the respective entries. If (as was not the case here) proof *aliunde* be made that the deed was erroneously recorded, or that the name is upon the record Keyes and not Reyes, and that the apparent discrepancy arises from the age of the instrument or from blind writing, then with some such substantial proof, the index would be competent as a circumstance. Standing alone as here, the index is insufficient to vary the letter of the deed record, and is therefore incompetent, and in the absence of other proof, or other attack upon the apparent reading of the deed, the court should have sustained the objection made to it.

For the errors noted, we think this case ought to be reversed and remanded for a new trial so that, if counsel are so advised, they may put in proof to illuminate points and corners of it, which are now so dark that the justice of it is fairly debatable. Let it be reversed and remanded for a new trial.

*Walker, J.,* concurs; *Revelle, J.,* not sitting.