[Civ. No. 2013.   Third Appellate District.—September 8, 1919.]

WILLIAM B. ROBBEN, Plaintiff and Respondent, v. MRS. I. M. BENSON et al., Defendants and Appellants; OSCAR C. SCHULZE, INC., Intervener and Respondent.

[1] APPEAL—LAW OF CASE—NEW TRIAL—DIFFERENT FACTS.—The law of a case determined by an appeal does not apply to a new trial of the case in which substantially different facts are presented.

[2] DEEDS—MISTAKE IN NAME OF GRANTEE — REMEDY TO CORRECT.— Where a mistake has occurred in the name of a grantee in a deed which is essential to a title and which appears both in the deed and the record thereof, a suit to quiet title against the claims of grantee named is essential to the perfecting of the record title; but where the deed contains no mistake, the only mistake being in the recording of it, the owner cannot in good faith swear that there is an outstanding claim and the necessity for maintaining such an action disappears.

[3] APPEAL—LAW OF CASE—SUFFICIENCY OF ABSTRACT OF TITLE—SUBSEQUENT TRIAL—ADMISSION OF NEW FACTS.—In an action involv-

ing the sufficiency of the record title to certain property as shown by the abstract furnished, the opinion of the district court of appeal, declaring the necessity for the bringing of an action to quiet title in the vendor as against the grantee named in a certain deed as recorded to establish of record that the conveyance was made to such vendor's predecessor instead of the grantee named, will not prevent such vendor on a subsequent trial from showing by evidence, which was not before the district court of appeal, that the deed in question was not important.

[4] ID.—FINDING NOT QUESTIONED—TAKEN AS TRUE.—Where the sufficiency of the evidence to sustain a finding of the trial court is not questioned in any way the finding is to be taken as true on appeal.

[5] ID.—DUTY OF APPELLANT — OBJECTIONS CONSIDERED.— It is the duty of the appellant to point out the evidence or the lack of evidence showing a finding assailed is unsupported. The court on appeal will look only to the objections argued.

[6] NAMES—IDEM SONANS—REBUTTAL OF PRIMA FACIE CASE.—Names which have the same pronunciation do *prima facie* designate the same persons, but the *prima facie* case so shown is liable to be much shaken by the slightest proof of facts which produce a doubt of identity.

[7] ID.—ADMISSIBILITY OF PAROL EVIDENCE.—Where the case permits parol evidence, such testimony may show two names to be within the rule although there is considerable difference in spelling.

[8] ID.—SIMILARITY OF SOUND — PROVINCE OF COURT AND JURY.—If two names spelled differently, necessarily sound alike, the court may as a matter of law pronounce them to be *idem sonans;* but if they do not necessarily sound alike, the question whether they are *idem sonans* is a question of fact for the jury.

[9] ID.—ADDITION OF LETTER "S."—Generally, the addition of a letter "s" to one of the two names considered takes them without the rule of *idem sonans.*

[10] ID.—RELEVANCY OF FACTS IN REGARD TO TITLE.—The facts in regard to the title of property as shown by the records would be quite as conclusive as an aid in determining the question of identity as would be the clearest kind of parol testimony introduced in those cases where the court is in doubt as to whether two names which are very similar, though somewhat differently spelled, have substantially the same pronunciation and designate the same person.

---

6. *Idem sonans,* note, 100 Am. St. Rep. 322.

9. Addition or omission of final "s" as affecting application of doctrine of *idem sonans,* notes, Ann. Cas. 1918A, 351; 52 L. R. A. (N. S.) 937.

[11] ID.—EFFECT OF INSTRUMENT OF RECORD—ABSENCE OF ADVERSE CLAIMS.—In judging whether a title is affected by an instrument of record purporting to show an interest outstanding in another it is permissible to show that no claim has ever been asserted by such other person.

[12] ID.—CASE AT BAR—SIMILARITY OF NAMES—SAME INDIVIDUAL—FINDING.—In this action, although the two names, "B. W. Robbins," and "B. W. Robben," were not strictly within the rule of *idem sonans*, considering the great resemblance between them, the fact that they both appear in connection with the same title, and that during a period of thirty-eight years there had been no adverse claim to the property, the record would leave no reasonable doubt in regard to the title, and a finding that the two names represented different persons would not be sustained.

[13] QUIETING TITLE—INTERVENTION BY LIEN CLAIMANT.—In an action to quiet title, a person claiming a judgment lien on the property may be permitted to intervene.

APPEAL from a judgment of the Superior Court of Solano County. W. T. O'Donnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. L. Shinn and A. L. Hart for Appellants.

W. U. Goodman for Plaintiff and Respondent.

F. F. Marshall for Intervener and Respondent.

W. A. ANDERSON, J., *pro tem.*—This is in form an action to quiet title brought by the vendor against the vendees upon an alleged forfeiture by the vendees under a contract for the sale of real property, and the main point urged by appellants for a reversal of the judgment is that the law of the case has been violated. It is also urged that intervention should have been denied.

The complaint contains two counts. The first count is in the usual form employed in an action to quiet title. The second count alleges that on December 6, 1911, the plaintiff, William B. Robben, made an agreement with the defendants, Mrs. I. M. Benson, Alt. G. Smith and E. W. Benson, whereby plaintiff agreed to sell to the defendants the northwest quarter of section 30, township 7 north, range 2 east, Mount Diablo base and meridian, for twenty-one thousand

six hundred dollars, payable in installments. The contract
is set out in the complaint.

The plaintiff agreed to furnish an abstract. The contract
stated: "Second parties are to be given 15 days in which to
examine said abstract and report upon the same; in the event
title to said premises shall be found to be defective, the said
first party is to be given a reasonable time in which to perfect
the same." The contract did not in terms provide that time
should be the essence thereof; it declared the vendees' rights
would be forfeited for failure to comply with its terms. It
gave the vendees immediate possession. It is further alleged
in the second count of the complaint that on December 6,
1914, there was due on the contract $4,176 and that this
sum has not been paid, and that under the terms of the con-
tract the rights of the vendees have become forfeited.

Defendants' answer first denies all the material averments
of the first count of the complaint. It is admitted defendants
claimed an interest in the property. In their answer to the
second count of the complaint the defendants deny that on
December 6, 1911, any sum became due under the contract.
They admit that they paid nothing on that date, but they
deny that any sum was due. The defendants filed a cross-
complaint in which they set up the contract, and allege they
had entered into the possession of the land; that they had
fully performed all of the conditions of the contract; that up
to December 1, 1914, the plaintiff had failed to furnish a com-
plete or any abstract of title to the land, although the same
was demanded on that date; that on or about December 18,
1914, the plaintiff furnished an abstract which was defective
and which was objected to on the grounds that it showed the
record title to the property was vested in one B. W. Robbins,
and that the United States patent to the lands failed to
specify any township or range, and that there was a like
omission in a certain deed from William T. Smith to W. D.
Vail; that after the objections were made to the abstract
plaintiff refused to make correction of the deed from Smith
to Vail or to obtain a conveyance from B. W. Robbins or to
quiet his title; that after the first examination of the ab-
stract by defendants and their noting of their objections
thereto and their return of the abstract to the plaintiff for
correction of the title, the plaintiff again returned it to the
defendants, and from a re-examination of said abstract by

defendants it was ascertained that the abstract had been falsified so that it was made to appear that no conveyance to B. W. Robbins had ever been recorded, that the abstract failed to show record title to the land; that complaint was made, but that plaintiff refused to furnish any other or additional abstract. The cross-complaint alleged the amounts paid on the purchase price of the land and the amounts expended on the property during defendants' possession; it alleged possession of the property had been surrendered, and prayed for a recovery of the moneys paid and expended.

The answer to the cross-complaint denied that there was any failure to furnish a complete abstract of the title, or that the title was defective, or that there was any refusal to procure a decree quieting title, and alleged that it clearly appeared from the abstract that Robbins had no interest in the land. Plaintiff denied that the abstract was falsified or that the defendants refused to accept it, or that plaintiff had refused to do anything further with respect to the title.

At the trial it was conceded that the defect in the patenting of the lands had been remedied, and the defendants asserted that the defect upon which they relied was the record of the deed from Vail to Robbins and what had transpired in regard thereto.

The case has been twice tried. On each trial plaintiff prevailed. The first judgment was reversed (37 Cal. App. 227, [173 Pac. 766]). The judgment entered on the second trial, like that entered on the first trial, provided that if the defendants did not pay the amounts due under the contract within a time specified, their rights in the property would be forfeited.

The point relied on for a reversal is that the former opinion is the law of the case. In this contention appellants overlook the difference between the record of the case as first presented and as now presented. The bill of exceptions used on the first appeal did not contain all of the evidence offered on the first trial; it did not contain the abstracts offered in evidence; it contained a recital in regard to the abstracts which narrowed the court's consideration of the case to a particular point.

[1] The law of a case determined by an appeal does not apply to a new trial of the case in which substantially different facts are presented. (*Ellis* v. *Witmer,* 148 Cal. 531, [83

Pac. 800] ; *Stockton etc. Works* v. *Glens etc. 1. Co.*, 121 Cal.
174, [53 Pac. 565] ; *Duckworth* v. *Watsonville Water etc.
Co.*, 170 Cal. 433, [150 Pac. 58].) The difference in facts
here is not so much a difference between the evidence received
on the first and that received on the second trial, as it is a
difference between the evidence offered at the first trial and
the record of the same presented to the court on the first
appeal.

The former opinion of the district court of appeal recites
that in order to show complete title it became necessary for
the plaintiff to show a conveyance from one W. D. Vail to
B. W. Robben; that the abstract showed a conveyance made
on November 8, 1876, from W. D. Vail to B. W. Robbins;
that this instrument was recorded on November 10, 1876;
that after the abstract was returned to the plaintiff the at-
torney for the plaintiff, together with the abstracter, went
to the office of the county recorder of Solano County, and,
on December 14, 1914, the recorder changed the record so
that the word "Robbins" was made to read "Robben"; that
thereupon the abstract was changed so that it appeared a
deed had been made by the said Vail to the said Robben
and that such deed had been recorded; that the defendants
had examined the record showing the change and had objected
to the title, and that plaintiff had refused to do anything
further in the way of furnishing an abstract.

The evidence on the second trial shows that the record of
the first recording of the deed was changed as stated, lines
being drawn through the name "Robbins," and the word
"Robben" being written above; the initials of the recorder
and his deputy were written in the margin of the record.
The original deed was produced when the change was made.
The testimony shows the parties making the change thought
the course pursued was proper. The character of the change
is evident from the record, a photographic copy of which is
set out in the reporter's transcript. As hereinafter shown,
the original deed was later re-recorded.

It is conceded in the briefs that the record on the former
appeal contained the statement next quoted, with respect to
the abstract or abstracts furnished to defendants by the
plaintiff :

"The entire abstract was filed in evidence, marked 'Plain-
tiff's Exhibit B,' and as filed showed perfect record title in

the plaintiff. One of the essential muniments of title appearing in said abstract was a deed purporting to have been executed by W. D. Vail to B. W. Robben, dated Nov. 8, 1876, and recorded Nov. 10, 1876, in Book 63 of Deeds, page 117. The said deed as appearing in said abstract did not show anything with reference to any change or correction of the record of the same in Book 63 of Deeds, page 117, since the date of its said recordation.''

On the last trial the court made a finding as to the record title of plaintiff, which is to the effect that the record of the deed to B. W. Robbins was not a part of the chain of title to plaintiff's lands. This finding is based upon evidence which was not before the district court of appeal, except to the extent shown by the quotation last set forth.

In the former opinion it was also stated that, after complaint was made as to the change in the record of the deed to B. W. Robbins, ''The plaintiff refused to have anything more to do with the abstract, but it does appear that on or about the 15th of January, 1915, a conveyance from Vail to Robben was taken to the recorder's office and recorded. However, the existence of this conveyance and of the fact of its being placed of record was not called to the attention of the defendants, nor does it appear that any supplemental abstract was furnished by the plaintiff to the defendants showing the devolution of title from Vail to Robben. The matter appears to have remained *in statu quo* until about April 5, 1915, when the plaintiff began this action to quiet title to the premises involved.'' This statement was in accordance with the record of the case as presented to the court. On the second trial the exact facts were shown with respect to furnishing supplementary abstracts, and on this appeal these facts and these abstracts are brought up, and the record is not curtailed by the brief recital set forth in the record of the former appeal. (The entire record relating to the evidence on the former appeal contained 25 pages, and on this appeal it numbers 312 pages.)

In regard to the showing as to title, the former opinion points out that on the trial of the case and for the purpose of showing title to the property, the plaintiff introduced in evidence the original deed from W. D. Vail to B. W. Robben, dated November 8, 1876, and recorded November 10, 1876,

and re-recorded January 15, 1915. The court, in the former opinion, declares:

"There does not appear to be any testimony showing that the existence of this deed was called to the attention of appellants until its introduction in evidence."

The testimony of F. F. Marshall, who was acting as the attorney for plaintiff, was offered on the second trial. It showed the furnishing to defendants of a supplementary abstract showing the re-recording of this deed.

This court, in its former opinion, recognized the rule that defendants were entitled to a title fairly deducible of record as well as good title in fact; it held that the county recorder was not authorized to make the change in the record. The court further declared: "The re-recording of the deed from Vail to Robben on January 15, 1915, and exhibit thereof to the defendants, would have laid a foundation for maintaining an action wherein, all proper parties defendant having been joined, judgment might have been entered by the trial court, finding plaintiff's title valid, quieting any claims of B. W. Robbins to said premises, establishing of record that the conveyance purporting to be made to Robbins was in fact made to Robben, and decreeing performance by the appellants within a reasonable time or suffer the alternative of a forfeiture." The court then pointed out that the plaintiff had not elected to pursue the course suggested, but had, in effect, elected to treat the contract as ended by bringing suit to quiet title. The court ruled that defendants, having surrendered possession, were entitled to a return of the money they had paid out; that the defendants' motion for a nonsuit should have been granted; that the trial court should have proceeded to determine the amount the defendants were entitled to recover.

It distinctly appeared on the second trial of the case that this original deed bore indorsements of the county recorder made in conformity with sections 4137 and 4138 (formerly sections 4241 and 4242) of the Political Code, showing that it was the deed which had been recorded on November 10, 1876, in book 63 of deeds, page 117. The indorsements of the county recorder, made upon this original deed, specified the time of recordation and the place thereof, and these indorsements are shown in the supplementary abstracts covering the second recording of the instrument. On the second trial

of the case it was shown that this abstract was furnished to defendants, and it also appeared that the evidence before the trial court on the first trial of the case showed the same thing. Defendants on receiving the abstract showing the foregoing facts never called for the production of the original deed. They made general objection that title had not been shown. The original deed was introduced as an exhibit on the trial of the case, and the grantee is therein named W. B. Robben.

It is true that in the first opinion of this court it was, in effect, declared that there should have been not only rerecording of the deed from Vail to Robben and the exhibit thereof to the defendants, but that there should also have been a suit to quiet title against the claims of Robbins. [2] While authorities were not cited in support of the position that such an action was necessary, there are authorities to the effect that where a mistake has occurred in the name of a grantee in a deed which is essential to a title and which appears, both in the deed and in the record thereof, an action of the kind suggested by this court is essential. (*Walters* v. *Mitchell*, 6 Cal. App. 410, [92 Pac. 315].) The case last cited suggests that a suit *in rem* will reach such an outstanding claim. But where the plaintiff, as here, has found the original deed, and it is obvious to him that the deed contains no mistake, but that the mistake is in the first recording of it, he could not in good faith swear there was an outstanding claim. But the necessity for maintaining such an action as that referred to disappears, in view of the finding of the trial court, based on evidence offered on the second trial of the case. Finding VIII, made by the trial court on the second trial of the case, is as follows:

"That the complete chain of title of record in said property vested in plaintiff is as follows:

"U. S. Patent to William T. Smith;

"Deed from William T. Smith and Mary Smith, his wife, to W. D. Vail;

"Deed from W. D. Vail to Bank of Dixon;

"Deed from Bank of Dixon to W. B. Robben;

"The Court finds that B. W. Robbins never had any title to said land, record or otherwise.

"The Court finds that at one time subsequent to conveying said land to Bank of Dixon, W. D. Vail made and executed

a deed conveying said land to B. W. Robben; said deed was in-
correctly recorded by the County Recorder copying said name
Robben as Robbins; said deed from Vail to Robben was
subsequently correctly recorded in the office of the County
Recorder of Solano County and the re-recording of said deed
set forth in said abstract which was furnished to defendants
on or about the 4th day of March, 1915; that plaintiff
through mesne conveyances, all of which appear of record
and are set forth in said abstract, obtained whatever title
the said B. W. Robben might have had to said land.''

The foregoing finding evidently proceeds on the theory that
Vail deeded to the bank before the recording of the so-called
deed to Robbins, that the bank continued to hold title, and
later, and during the time defendants were objecting to the
record of the title, proceeded to convey the title to the plain-
tiff herein. The original abstract showed the deed to the
bank, and a supplementary abstract showed the deed from the
bank to the plaintiff herein. The evidence showed these
abstracts were furnished to defendants. It further appears
that neither of these deeds constituted any part of the evi-
dence as supplied to the district court of appeal on the first
hearing. The present appeal is upon a reporter's transcript,
which contains all the abstracts furnished defendants.

Appellants refer neither to testimony nor to the absence
of testimony for the purpose of showing that the foregoing
finding is not supported by the evidence. [3] Their sole
point is that what the district court of appeal said in its
opinion on the former trial in regard to the importance of the
record of the so-called deed to Robbins and the remedy to be
pursued to clear the record of a possible claim under that
deed was binding on the trial court. Certainly the former
opinion did not preclude respondent from showing by evi-
dence, which was not before the district court of appeal, that
the so-called deed to Robbins was not important. [4] As
stated, the sufficiency of the evidence to sustain the finding
of the trial court, hereinbefore quoted, is not questioned in
any way, and this being so, the finding is to be taken as true
on appeal. (*Brovelli* v. *Bianchi,* 136 Cal. 612, [69 Pac. 416];
*Kyle* v. *Craig,* 125 Cal. 116, [57 Pac. 791]; *Tait* v. *McInnes,*
3 Cal. App. 156, [84 Pac. 674].) [5] These cases establish
that it is the duty of the appellant to point out the evidence
or the lack of evidence showing a finding assailed is unsup-

ported, and that the court on appeal will look only to the objections argued. This finding referred to evidently depends upon evidence consisting of pages of the abstracts which were no part of the record on the first appeal, and this being true, and the finding being unassailed, it is determinative of the case.

In view of the evidence offered at the second trial we would be compelled to hold that if finding VIII of the trial court could be disregarded and plaintiff were compelled to rely upon the record of a deed to Robbins, his title would be good and fairly deducible of record. It is true that the former opinion of the court conclusively determines that "B. W. Robbins" and "B. W. Robben," are not within the rule of *idem sonans*. **[6]** Names which have the same pronunciation do *prima facie* designate the same persons. "But this *prima facie* case so shown is liable to be much shaken by the very slightest proof of facts which produce a doubt of identity. A well-known writer seems to state the rule on this point very acceptably and clearly: 'The probative force of the inference of identity from similarity of names is greatly diminished in force, even to the vanishing point, by introducing into the consideration of the matter facts inconsistent with the truth of the administrative assumption that similar names identify a single individual.' 2 Chamberlayne, Mod. Law of Ev. 1191." (*Keyes* v. *Munroe*, 266 Mo. 114, [180 S. W. 863].) The following is a further explanation of the rule: "In the case of *Johnson* v. *State*, 65 Fla. 492, [62 South. 655], Mr. Justice Taylor, who delivered the opinion of the court, said: 'Where two names are presented to the consideration of the court, the inference that they designate the same individual is strong in proportion as the difference between the two are slight; and conversely, the inference of identity is weak as the points of difference between the two names are numerous and marked.' " (*Rhodes* v. *State*, 74 Fla. 230, [76 South. 776].) **[7]** Where the case permits parol evidence, such testimony may show two names to be within the rule although there is a considerable difference in spelling. (*People* v. *Fick*, 89 Cal. 149, [26 Pac. 759].) The part which parol evidence may play in establishing identity of pronunciation and hence identity of persons is further explained in the case next quoted from. In *Commonwealth* v. *Warren*, 143 Mass. 568, [10 N. E. 178, it was said: "The

province of the court and jury in cases like the present is governed by the following rule: [8] 'If two names spelled differently, necessarily sound alike, the court may as matter of law pronounce them to be *idem sonans;* but, if they do not necessarily sound alike, the question whether they are *idem sonans* is a question of fact for the jury.' '' In *Munkers* v. *State,* 87 Ala. 96, [6 South. 358], Clopton, J., said: ''Though this is strictly a question of pronunciation when raised by demurrer, it may be treated as a question of law; but in such case the judgment of the court should express the conclusion of law from facts or rules of which judicial notice may be taken. When there is no generally received English pronunciation of the names as one and the same, and the difference in sound is not so slight as to be scarcely perceptible, the doctrine of *idem sonans* cannot be applied without the aid of extrinsic evidence, unless when sound and power are given to the letters as required by the principles of pronunciation, the names may have the same enunciation on sound.'' (*Veal* v. *State,* 116 Ga. 589, [42 S. E. 705].) The court proceeded to specify names that, as matter of law, had been held within the rule, as follows: ''Blankenship'' and ''Blackership,'' ''Owens D. Havely'' and ''Owen D. Haverly,'' ''Hudson'' and ''Hutson,'' ''Jeffers'' and ''Jeffries.'' It held that ''Witt'' and ''Wid'' were the same as matter of law. The names ''Pomp Burton'' and ''Pomp Burden'' are within the rule. (*Burton* v. *State,* 10 Ala. App. 214, [65 South. 91].) Also ''Robert'' and ''Roberts.'' (*Willis* v. *United States,* 6 Ind. Ter. 424, [98 S. W. 147].) [9] Generally, however, the addition of a letter ''s'' to one of the two names considered takes them without the rule. (29 Cyc. 276.) The footnotes at page 274 show cases in which the use of the letter is not controlling. Among the cases is cited *Seaver* v. *Fitzgerald,* 23 Cal. 85, in which the names ''Seaver'' and ''Seavers'' were declared to be substantially the same. The case is cited in *Brum* v. *Ivins,* 154 Cal. 17, [129 Am. St. Rep. 137, 96 Pac. 876]. If, in the days when neither deeds nor the records thereof were typewritten, a deed had been made to D. C. Seaver and recorded as a deed to D. C. Seavers, and the transaction had stood unassailed for forty years, D. C. Seaver and his successors dealing with the property, and D. C. Seavers and his successors not appearing at all in the record of title for a period of forty

years, we think that although it could be held that such names are slightly without the rule of *idem sonans,* the record facts in regard to the title, coupled with the great similarity in names, would leave no substantial uncertainty as to the identity of the persons designated by the different names. [10] The facts in regard to the title as shown by the records would be quite as conclusive as an aid in determining the question of identity as would be the clearest kind of parol testimony introduced in those cases where the court is in doubt as to whether two names which are very similar, though somewhat differently spelled, have substantially the same pronunciation and designate the same person.

An examination of the abstract of title shows that the deed in question was made November 8, 1876. The consideration recited was seventeen thousand dollars. The property was evidently of considerable value. The records show that after November 8, 1876, no person by the name of B. W. Robbins ever dealt with the lands, that B. W. Robben did deal with the lands, that no suit to quiet title against him was filed, that the estate of his successor in interest, Dorotha Robben, was duly administered upon in Solano County and that the property in question was appraised and accounted for as a part of the estate of Dorotha Robben, and was distributed to the heirs of Dorotha Robben, who, in turn, granted to the present plaintiff, W. B. Robben. The identity in sound between Robben and Robbin appears from the abstract. Crop mortgages made by one of the Robben heirs are signed "F. W. Robben," the body of the instruments and certificates of acknowledgment showing "F. W. Robbin." No claim is asserted of record by B. W. Robbins at any time, nor is any claim asserted of record by any one purporting to be his successor. During the long period of thirty-eight years, no one by the name of W. B. Robbins, and no one appearing to claim through W. B. Robbins, has exercised any act of ownership over the property. The silence of the record in this respect speaks as loudly as any words. [11] In judging whether a title is affected by an instrument of record purporting to show an interest outstanding in another it is permissible to show that no claim has ever been asserted by such other person. This was held in a case in which it was contended that an ancient bond for a deed showed a cloud

on title. (*Read* v. *Sefton,* 11 Cal. App. 88, [103 Pac. 1095].)
[12] In this case such evidence bears directly on the point
considered. The initials of the two names are the same; the
first syllable of the two names is the same, and all that holds
them apart is the letter "*s,*" a letter not always preventing
the application of the rule of *idem sonans* as matter of law.
The two names appear in connection with the same title.
Considering the transactions with regard to the title in ques-
tion, as shown by the record and covering a period of thirty-
eight years, and considering the great resemblance between
the two names, B. W. Robbins and B. W. Robben, there
would be no substantial reason for saying the two names rep-
resented different persons, even though the two names did not
fall strictly within the rule of *idem sonans.* The entire record
would leave no reasonable doubt in regard to the title, and a
finding on any other theory would not be sustained.

[13] The trial court permitted Oscar C. Schulze, Inc.,
a corporation, to intervene. The company filed a complaint
in intervention against the various defendants, setting up a
claim to the interest of defendants in the property based
upon judgment liens alleged to have been obtained in various
actions heretofore prosecuted. The appellants cite the case of
*Isaacs* v. *Jones,* 121 Cal. 257, [53 Pac. 793, 1101], as deter-
mining the intervention was improper. The case is not in
point. A person claiming a judgment lien on real property
comes within section 738 of the Code of Civil Procedure.
Such a person may sue to remove a cloud on the title to the
property (32 Cyc. 1334).

It follows, therefore, that the judgment of the trial court
should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.